# No. _____

## United States Court of Appeals
FOR THE
## Second Circuit

---

United States of America,

v.

John B. Ohle, III and William E. Bradley.

---

In Re: Patricia Dalton Ohle, Festivus for the Rest of Us, Inc., The Museum of Sports History, LLC, JSJD Grantor Trust, Dalton Ohle Investment Property Trust,

*Applicants.*

---

**PETITION FOR *WRIT OF MANDAMUS***
**to the Second Circuit Court of Appeal**
**related to Final Order of Hon. Senior Judge Jed S. Rakoff,**
**U.S. District Court for the Southern District**
**of New York, Case No. 08-cr-1109-JSR.**

---

WESLEY D. EHRHARDT
PATTERSON EHRHARDT PLLC
213 North Main Street
Como, Mississippi 38619
*Telephone*: (662) 526-1993
*Facsimile*: (662) 586-1556
*Email*: wde@pattersonehrhardt.com

*Counsel for Applicants*

# TABLE OF CONTENTS

TABLE OF CITATIONS …………………………………………… iv

CORPORATE DISCLOSURE STATEMENT ……………………… vii

STATEMENT REGARDING ORAL ARGUMENT………………… viii

JURISDICTIONAL STATEMENT ………………………………… ix

RELIEF SOUGHT ………………………………………………… 1

ISSUES PRESENTED …………………………………………….. 3

FACTS NECESSARY TO UNDERSTAND ISSUES PRESENTED…4

    I.      OHLE OBTAINED 2004 LOUISIANA JUDGMENT
           AND AGREEMENT RELIEVING OHLE OF ANY
           AND ALL LIABILITY RELATED TO AMES ……...… 5

    II.     GOVERNMENT DEFRAUDED COURT AND OHLE
           AT TRIAL…………………………………………… 6

    III.    DISTRICT COURT IGNORED FINAL 2004
           LOUISIANA JUDGMENT AND AGREEMENT
           IN FORFEITURE ORDER …………………………….. 9

    IV.    LOUISIANA COURTS HOLD IN 2017 THAT
           AMES CANNOT BE "VICTIM" BASED ON
           FINAL 2004 LOUISIANA JUDGMENT AND
           AGREEMENT ………………………………………. 11

PROCEDURAL HISTORY …………………………………………. 12

## **TABLE OF CONTENTS (con't)**

REASONS WHY THE WRIT SHOULD ISSUE …………………… 14

I.    APPLICANTS HAVE A CLEAR AND
INDISPUTABLE RIGHT TO ISSUANCE OF
THE WRIT ………………………………..………… 16

    A.    Louisiana Civil District Court Held on
March 23, 2016 that Ames Cannot Claim
"Victim" Status…………………….…………… 16

    B.    Louisiana Appellate Court Confirmed on
April 26, 2017 that Ames Is Precluded
From Obtaining Monies from Ohle……………… 17

    C.    Forfeiture Order is Void Because the District
Court Lacked Personal Jurisdiction and Violated
Constitutional Due Process Protections ………… 19

    D.    Forfeiture Order Is Void Because It Lacks
Subject Matter Jurisdiction Pursuant to
Rooker-Feldman Doctrine ……………………… 23

II.    APPLICANTS HAVE NO OTHER ADEQUATE
MEANS TO AVOID IRREPARABLE HARM ……… 25

III.    APPLICANTS' PETITION FOR WRIT OF
MANDAMUS SHOULD BE GRANTED BASED
ON THE FACTS HEREIN……………………………… 29

CONCLUSION …………………………………………………… 30

iii

# **TABLE OF CITATIONS**

<u>CASES</u>

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34,

    101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (*per curiam*)……..….…27

*American Express Warehousing, Ltd. v. Transamerica Insurance*

    *Co.*, 380 F.2d 277, 283 (2d Cir.1967)…………….………………27

*Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383,

    74 S.Ct. 145, 148, 98 L.Ed. 106 (1953)…………..…………….…...27

*Crawford v. Washington*, 541 U.S. 36 (2004)…………………….…….22

*Ecetra N. Ames v. John B. Ohle, III et al.*, Orleans Parish CDC,

    Louisiana, 11-440………………………………….....… 1,11,16,22

*Ecetra N. Ames v. John B. Ohle, III et al.*, 2016-CA-0612,

    (La. App. 4 Cir. 4/26/17), 219 So.3d 396 (2017)……...1,3,12,17,22,26

*Eckel v. MacNeal*, 628 N.E. 2d 741 (Ill. App. Dist. 1993)…………………20

*Franchise Tax Board v. Hyatt*, 538 U.S. 488, 494 (2003), quoting *Baker v.*

    *General Motors*, 522 U. S. 222, 232 (1998)………………………….2

*Hobbs v. U.S. Office of Personnel Management*, 485 F.Supp. 456 (M.D. Fla.

    1980)……………………………………………………………...15

*Holstein v. City of Chicago*, 803 F.Supp. 205, *reconsideration*

    *denied* 149 F.R.D. 147, *affirmed* 29 F.3d 1145 (N.D. Ill 1992)….….15

*Honeycutt v. United States,* 198 L. Ed. 2D 73 (U.S. 6/5/17),

    581 U.S. ___ (2017)…………………………………………....28

*In re United States*, 10 F.3d 931, 933 (2d Cir. 1993)………………………27

*Klugh v. U.S.*, 620 F.Supp. 892 (D.S.C. 1985)..........................................15

*La Buy v. Howes Leather Co.*, 352 U.S. 249, 259-60, 77 S.Ct. 309, 315,

    1L.Ed.2d 290 (1957)……………………………………………...27

# <u>TABLE OF CITATIONS (con't)</u>

<u>CASES (con't)</u>

*Leonard v. Texas*, 137 S. Ct. 847 (U.S. 3/6/17), 580 U.S. ___ (2017)…….28

*Long v. Shorebank Development Corp.*, 182 F.3d 548 (C.A. 7 Ill. 1999)…20

*Loyd v. Director, Dept. of Public Safety*, 480 So. 2d 577 (Ala. Civ. App. 1985)……………………………………………....…...15

*Lubben v. Selevtive Service System Local Bd.* No. 27, 453 F.2d 645, 14 A.L.R. Fed. 298 (C.A. 1 Mass. 1972)……………………………15

*Luis v. United States,* 136 S. Ct. 1083 (U.S. 2016).....................................28

*Matsushita v. Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996)…………...21

*Mattox v. United States,* 156 U.S. 237 (1895)………………………….....22

*Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 2d 278 (1940)…..23

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)…………………………………………….3,24

*Rubin v. Johns*, 109 F.R.D. 174 (D. Virgin Islands 1985)…………………15

*Schlagenhauf v. Holder*, 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964)…………………………………………27

*Steinmetz v. Toyota Motor Credit Corp.*, 963 F.Supp. 1294, 1299 (E.D.N.Y. 1997) (citing *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2nd Cir. 1987))……………………………………...……….21

*Triad Energy Corp. v. McNell*, 110 F.R.D. 382 (S.D.N.Y. 1986)……...….15

*Tube City Mining & Milling Co. v. Otterson*, 16 Ariz. 305, 146 P. 203 (1914)……………………………………………23

*United States v. John B. Ohle, III and William Bradley*, 08 cr. 1109 (JSR)……………………………………...……..4,30

*Wahl v. Round Valley Bank,* 38 Ariz. 411, 300 P. 955 (1931)………..……23

<u>**TABLE OF CITATIONS (con't)**</u>

*Will v. United States*, 389 U.S. 90, 107, 88 S.Ct. 269, 280,

19 L.Ed.2d 305 (1967)……………………………………...27


<u>CONSTITUTIONAL PROVISIONS</u>

U.S. Const. Art. IV, § 1..........................................................................2,21

U.S. Const. Art. Const. Amed. 5……………………………………..…15

U.S. Const. Art. Const. Amed. 6……………………………………..…22


<u>STATUTES</u>

2 U.S.C. § 1738……………………………………………………..…21

28 U.S.C. § 1651………………………………………………....1,26

28 U.S.C.A. …………………………………………………………..15


<u>RULES</u>

Fed. Rules Civ. Proc., Rule 60(b)(4)…………………………...………..15

Fed. Rules Civ. Proc., Rule 60(d)(3)………………………………………25

Fed. R. App. P. 21……………………………………………..………1


<u>LOUISIANA STATUTES</u>

La. R.S. 9:2088…………………………………………………..………11

La. R.S. 9:2234………………………………………………….10,24


<u>OTHER AUTHORITIES</u>

9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice p. 110,

28, at 312 (2d ed. 1987)…………………………………………..27

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rules of Appellate Procedure 26.1, Applicants hereby disclose that they are not public corporations, have no parent corporation, and have no publicly-held corporation that owns 10% or more of any stock.

/s/ Wesley D. Ehrhardt

Wesley D. Ehrhardt
*Counsel for Applicants*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This case presents profound issues regarding Constitutional violations that resulted in the loss of property in an unlawful judgment of forfeiture. Because of the importance of these issues, Applicants respectfully request oral argument.

## <u>JURISDICTIONAL STATEMENT</u>

This is a petition for a *writ of mandamus* related to the December 30, 2015, Memorandum Order (Case 1:08-cr-01109-JSR, Doc. 273) of the United States District Court for Southern District of New York that denied Applicants' motion to set aside the forfeiture order. Because the issues raised in this petition arise following a final judgment, this Court has proper jurisdiction pursuant to 28 U.S.C. § 1291, 28 U.S.C. § 1651 and Fed. R. App. P. 21.

**RELIEF SOUGHT**

Pursuant to 28 U.S.C. § 1651 and Fed. R. App. P. 21, and more generally, the inherent equitable authority of the federal courts of appeals, Applicants Patricia Dalton Ohle, Festivus for the Rest of Us, Inc., Museum of Sports History, LLC, JSJD Grantor Trust, and Dalton-Ohle Investment Property Trust (hereafter, "Applicants") respectfully apply for a *writ of mandamus* directing the Honorable Judge Jed S. Rakoff, Senior District Judge of the United States District Court for the Southern District of New York, to vacate the forfeiture order related to the "Ames allegations," and order the government to promptly return to Applicants the current value of the assets unlawfully forfeited, consequential damages and grant Ohle all further relief to which he may be entitled at law or in equity.

On April 26, 2017, the Louisiana Fourth Circuit Court of Appeal affirmed the March 23, 2016 Civil District Court judgment that held Ecetra N. Ames ("Ames") is precluded by *res judicata* from claiming she is a victim or can obtain any monies from Ohle based on the allegations resolved in the Louisiana Consent Judgment (Appendix ("A-"), A-59-61, which was entered on January 12, 2004, and the related Settlement Agreement and Mutual Release (A-62-80), signed by Ames on October 14, 2003 (collectively, "2004 Louisiana Judgment and Agreement").

Based on the Louisiana judgments, the forfeiture order entered on May 8, 2012 by Judge Rakoff (A-51-54) is void because the district court (1) lacked

personal jurisdiction and (2) lacked subject matter jurisdiction, or (3) acted in manner inconsistent with due process of law.

First, the federal district court lacked personal jurisdiction when it ignored the Full Faith and Credit Clause in Article IV, Section 1 of the U.S. Constitution by failing to enforce the final 2004 Louisiana Judgment and Agreement against Ames. Instead, the District Court allowed the government to circumvent the 2004 Louisiana Judgment and Agreement, holding, without a jury finding, that John B. Ohle, III ("Ohle") defrauded Ecetra Nippert Ames ("Ames") and ordered the Applicants to forfeit $1,697,834 in clear violation of their Constitutional due process rights. The Full Faith and Credit Clause requires that other jurisdictions within the United States respect the "public acts, records, and ***judicial proceedings*** of every other state" [***emphasis added***]. According to the Supreme Court, judgments are entitled to even greater respect than laws in other states. *Franchise Tax Board v. Hyatt*, 538 U.S. 488, 494 (2003), quoting *Baker v. General Motors*, 522 U. S. 222, 232 (1998).

Second, the federal district court lacked subject matter jurisdiction since the final 2004 Louisiana Judgment and Agreement precluded Ames from obtaining monies from Ohle. The Rooker-Feldman doctrine provides that lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court

judgment. Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment. *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Here, the federal district court entered a forfeiture order that circumvented the final 2004 Louisiana Judgment and Agreement that relieved Ohle from any and all liability – *known or unknown* -- related to Ames.

Based on the April 26, 2017 Judgment of the Louisiana Fourth Circuit Court of Appeal, which confirmed the validity and effect of the 2004 Louisiana Judgment and Agreement, the forfeiture order entered by the District Court is void and unenforceable related to the $1,697,834 attributable to monies alleged by the government were fraudulently obtained by Ohle from Ames (i.e., the "Ames allegations"). As a result, an extraordinary and immediate intervention by this Court is necessary because Applicants would suffer irreparable harm as they have exhausted all alternatives and have no other viable means to confine the lower court to the lawful exercise of its proscribed power, and to safeguard their Constitutional due process rights.

## ISSUES PRESENTED

1.    Whether a federal district court can order forfeiture in circumvention of a prior, final state judgment?

2.    Whether a federal district court's forfeiture order is void for a lack of

personal jurisdiction where Constitutional due process rights are violated when the federal district court ignored the Full Faith and Credit Clause in Article IV, Section 1 of the U.S. Constitution?

3.      Whether a federal district court's forfeiture order is void for a lack of subject matter jurisdiction under the Rooker-Feldman doctrine when a state court finds that its prior, final judgment precluded a party from claiming victim status or obtaining monies based on the prior allegations?

4.      Whether a federal district court can ignore state law that precludes a party from claiming victim status to obtain monies after prescribed period of time?

## FACTS NECESSARY TO UNDERSTAND ISSUES PRESENTED

The forfeiture in *U.S. v. Ohle,* Case No. 08-cr-1109 (JSR), involved two distinct components: $1,256,500 in monies purportedly obtained from Bank One's property,[1] and $1,697,834 attributable to monies that the government alleged were

---

[1]      Applicants appealed the district court order denying the motion to set aside the forfeiture based on the government's fraud on the court under F.R.C.P. 60(d). Newly discovered evidence proves the government withheld *Brady* material, and then engaged in a pattern of fraud to cover-up its failure to produce the exculpatory materials prior to trial (and throughout post-trial proceedings). Related to the Bank One forfeiture, the IRS has confirmed that the tax shelter promoter audits of both Bank One and J&G are currently held in its Austin FOIA office. The IRS audits contain indisputable, exculpable evidence such as sworn statements by both Bank One and J&G to the IRS that the disputed payments at issue in the forfeiture were made out of J&G's property, not Bank One's. The IRS files also contain statements from senior Bank One management that (1) Bank One never paid referral fees, (2) Bank One was only entitled to the HOMER consulting fees set forth in its Services Agreements with J&G, and (3) Bank One was not entitled to two percent (2.0%) on each HOMER transaction. This exculpatory evidence that also proves the government presented false evidence at trial was methodically concealed from Applicants (and Ohle) in its fraud on the district court and the Second Circuit. *See* Motion for Judicial Notice and Supplementation of Record (Doc. 85) and Reply (Doc. 101).

4

fraudulently obtained by Ohle from Ames.   As to the latter, the "Ames forfeiture," the subject of this *writ of mandamus*, the jury made no findings as to the alleged fraud or the nature or amount of the proceeds traceable thereto.

## I.    OHLE OBTAINED 2004 LOUISIANA JUDGMENT AND AGREEMENT RELIEVING OHLE OF ANY AND ALL LIABILITY RELATED TO AMES

In December 2002, Ames' son Hugh A. Uhalt ("Uhalt") made false accusations regarding Ohle as trustee of the Ames CRUT, prompting his mother to investigate Ohle.   In order to untangle himself from this volatile family situation, Ohle hired an attorney to prepare and submit a final accounting for the Ames CRUT setting forth all financial transactions, including the tripartite loan arrangement between the Ames CRUT, Gamma Trading and Dalton Ventures. Ohle's final accounting as well as the other false allegations of Uhalt (e.g., Ohle defrauded his mother of commissions on her Societe Generale warrants) were reviewed by Ames' attorneys and accountants whereby Ames, her husband, the Ames CRUT and Ohle entered into the 2004 Louisiana Judgment and Agreement, which relieved Ohle of any and all liability related to Uhalt's baseless allegations. *Condensed Supplemental Brief*, Case 1:13-cv-00450-JSR, Doc. 46 ("Condensed Supp'l Brief"), pp. 59-63.

## II.  **GOVERNMENT DEFRAUDED COURT AND OHLE AT TRIAL**

In 2008, four years after the 2004 Louisiana Judgment and Agreement, Uhalt breached the 2004 Louisiana Judgment and Agreement, reiterating his same false allegations against Ohle to the government that needed Ames to be defrauded in order to obtain venue in the Southern District of New York.  The government filed a second superseding indictment to incorporate Uhalt's false allegations on August 11, 2009.  Case 1:08-cr-1109(JSR), Doc. 38.

But Uhalt's fraud was not simply about money.  Uhalt recognized an opportunity to gain control of his mother's fortune and to unlawfully remove millions from the Ames CRUT through his false claims that Ohle acted improperly as trustee of the Ames CRUT.  Uhalt's perjured testimony resulted in the district court ordering the unlawful forfeiture of $1,697,834 and awarding restitution to Ames in direct contravention of the 2004 Louisiana Judgment and Agreement, which forever released Ohle from any and all claims of liability.

Ohle uncovered the fraudulent schemes of Ames and Uhalt through discovery in post-trial Louisiana civil litigation initiated by Uhalt in the Louisiana Civil District Court.  Ohle uncovered the fraud and filed a counterclaim against Ames and a separate lawsuit against Uhalt related to their fraudulent schemes to obtain monies from Ohle and remove millions of dollars unlawfully from the Ames CRUT (A-155-168).

6

Uhalt falsely testified at Ohle's criminal trial that his mother granted him a power of attorney ("POA") over her financial affairs and that he was trustee of the Ames CRUT. The government claimed that Ohle fraudulently obtained monies from Ames and the Ames CRUT to fund a third party participation in the HOMER tax shelter transaction. In support of this false claim, the government called Uhalt to testify in place of his mother (who did not appear at Ohle's criminal trial). Uhalt testified that Ohle had embezzled monies from the Ames CRUT and fraudulently obtained commissions from his mother's purchase of the Societe Generale warrants. Uhalt testified that he was acting pursuant to the POA from his mother when he discovered Ohle's fraudulent conduct. Trial Transcript ("Tr."), pp. 728-29. Then Uhalt stated that he, not his mother Ames, hired attorney John Wogan to investigate Ohle's actions as trustee of the Ames CRUT. Tr. 730. Of course, without a POA, Uhalt had no right to his mother's or the Ames CRUT's financial information (or involvement in Wogan's investigation). Due to the significance of Uhalt's claim that he was authorized to act on his mother's behalf under this POA, Ohle's trial counsel Stuart Abrams cross-examined Uhalt about his claim. Tr. 731-32. Uhalt persisted in his claim that he had a POA from his mother. Uhalt then claimed that he was successor trustee of the Ames CRUT. Tr. 732.

The district court immediately recognized the importance of Uhalt's testimony and called a sidebar conference where the government admitted that it

7

had not obtained documentation from Ames or anyone else that evidenced Uhalt's alleged POA.  Tr. 739.  In other words, Uhalt falsely testified that he demanded financial information from Ohle in connection with his "alleged investigation" of Ohle's conduct as trustee of the Ames CRUT.  Uhalt's "investigation" was based upon his false claim that he held a POA from his mother and was entitled to and reviewed financial information regarding his mother's financial affairs.  However, Uhalt never had a POA from his mother, nor was he involved in Ohle's final accounting to the Louisiana State Court.

Uhalt's deception was fully exposed in his civil deposition where he admitted that he did not have a POA from his mother until 2009 and that such POA was for the limited purpose of pursuing further claims on behalf of his mother against Ohle, Bank One, Societe Generale salesman Douglas Steger and the HOMER third party purchaser.  *See* Uhalt's repeated attempts to disguise his fraud at Ohle's trial at A-169-192.  Uhalt only obtained a general POA from his mother on March 11, 2014, some twelve (12) years after he claimed at Ohle's trial that he held such a POA.  A-175-177.  Tony Ames also confirmed in his civil deposition that Uhalt did not hold a POA from his mother. A-193-207.  Ultimately, Uhalt's admission in his civil deposition that he did not have a POA from his mother proved that his claim at Ohle's criminal trial was a blatant lie.  A-184-192. Similarly, documents discovered in the civil litigation prove that Uhalt had no

access to his mother's financial information until August 5, 2003. A-148-154. So, without the POA, Uhalt had no access to his mother's financial information, and his false testimony at Ohle's criminal trial that he discovered Ohle fraud allowed him to obtain the unlawful forfeiture order on behalf of his mother.

However, Uhalt was not done perjuring himself. Uhalt also claimed that he was trustee of the Ames CRUT. Documents obtained in the Ames civil litigation irrefutably prove that the Ames CRUT has had only had three trustees: Ohle, John Wogan and Steven O. Medo, Jr. A-208. In his civil deposition, Uhalt admitted that his trial testimony was false. A-188-192. Similarly, Uhalt's stepfather Tony Ames also testified that Uhalt had never been trustee of the Ames CRUT. A-197-199.

Uhalt had neither a POA from his mother nor was trustee of the Ames CRUT, but obtained fraudulent orders from the Court based on his perjured testimony. Uhalt did not stop there. Today, Uhalt controls his mother's entire fortune, including the unlawful forfeiture and restitution proceeds, following the guardianship proceedings he filed in New York. *See* A-128, footnote 1.

## III. DISTRICT COURT IGNORED FINAL 2004 LOUISIANA JUDGMENT AND AGREEMENT IN FORFEITURE ORDER

Based on the perjured testimony of Ames' son Uhalt and Societe Generale

("SocGen") salesman Steger[2], the district court found that Ames was a victim of Ohle's fraud, irrespective of the final 2004 Louisiana Judgment and Agreement that settled the identical false allegations. The Agreement in 2003 between Ames and Ohle expressly forever released Ohle – and, by extension Applicants – from any and all claims related to the Uhalt allegations relied on by the government – and the alleged victim Ames – to obtain monies from Ohle including the hotly contested forfeiture order, which must now be held void with respect to those monies related to the Ames Allegations. A-62-80.

Prior to entering into the binding 2004 Louisiana Judgment and Agreement, Ohle provided to Ames and her counsel a full accounting for the Charitable Remainder Unitrust (CRUT) in compliance with Louisiana law, including La. R.S. 9:2234. The district court failed to recognize the 2004 Louisiana Judgment and Agreement, held Ames was a "victim," and ordered the unlawful forfeiture in favor of Ames against Ohle.

The Applicants raised the issue in their motion to set aside the forfeiture. Case 13-cv-00450, Doc. 265, p. 16-22. However, the district court followed the

---

[2] At Ohle's trial, SocGen salesman Steger testified that he only received $50,000 of the $350,000 in sales commissions on the SocGen warrants. However, the post-trial forensic accounting exposes Steger's perjured testimony: Steger obtained $920,000 from Invested Interest [GX 73-1-D1] of which he transferred $600,000 to Dalton Ventures [GX 73-1-E6]. The difference of $320,000 plus the original $50,000 that Steger sent to his broker-dealer Chicago Investment Group [Tr. 1091] represented the entire $350,000 SocGen warrant commissions. Tr. 1090-92, 1098. The basis for Ohle's "fraud" on Ames was the perjured testimony of Uhalt and Steger.

same tact it took with Steger's perjured testimony, it ignored the 2004 Louisiana Judgment and Agreement. In doing so, the district court failed to give full faith and credit to the 2004 Louisiana Judgment and Agreement (A-9-17).

## IV.  LOUISIANA COURTS HOLD IN 2017 THAT AMES CANNOT BE A "VICTIM" BASED ON FINAL 2004 LOUISIANA JUDGMENT AND AGREEMENT

The 2004 Louisiana Judgment and Agreement were "tested" in the civil law suit filed by Uhalt on behalf of his mother in *Ecetra N. Ames v. John B. Ohle, III et al.*, Orleans Parish CDC, Louisiana, 11-440 -- which once again regurgitated the same allegations that were the subject of proceedings in Louisiana in 2004 – and which allegations served as the bedrock for the forfeiture with respect to Ames. On March 23, 2016, three months after the district court denied the Applicants' motion to set aside the forfeiture; the Louisiana Civil District Court dismissed all of Ames' claims on grounds of *res judicata* (A-125, A-81-124). The rationale being that the Ames' claims – that she and the Ames CRUT had been defrauded by Ohle – were previously dispatched via the 2004 Louisiana Judgment and Agreement entered into by Ames, her husband, the Ames CRUT and Ohle in 2004, which discharged and forever released Ohle from all liability and claims of any kind. Further, annexed to the Settlement Agreement and Mutual Release was the final accounting of Ohle's administration as trustee of the Ames CRUT, which the Consent Judgment approved and ordered conclusive against the beneficiaries of the

trust, including Ames and her husband.  La. R.S. 9:2088.  It must also be noted that no trustee of the Ames CRUT has ever accused Ohle of defrauding the Ames CRUT – only the government prosecutors who allowed Uhalt and Steger to falsely testify at trial.

On April 26, 2017, the Louisiana Fourth Circuit Court of Appeal confirmed that Ames was precluded from any recovery – based on *res judicata* – based on the same allegations subject to the 2004 Louisiana Judgment and Agreement. Honorable Judge Edwin Lombard held the Louisiana Civil District Court "properly determined that the Settlement Agreement and Consent Judgment [e.g., 2004 Louisiana Judgment and Agreement] formed a valid compromise" and precluded Ames from obtaining any monies from Ohle.  A-132-137.

The preliminary order of forfeiture on September 27, 2010 (A-55-58) is clearly outside the peremptive period provided by the Louisiana law.  Under Louisiana law, any claims against Ohle as trustee, including fraud, had to be brought within three years of the final accounting (i.e., January 12, 2007).  See La. R.S. 9:2234.  For the foregoing reasons, Applicants respectfully submit that the forfeiture order of $1,697.834 related to the "Ames allegations" must be set aside as a matter of law.

## **PROCEDURAL HISTORY**

On May 8, 2012, the District Court entered a Final Order of Forfeiture as to

Specific Property owned by Applicants (A-51-54). Based on the final forfeiture order that must now be deemed void, Applicants entered into a Final Stipulation and Order with the government on May 23, 2013, without admitting liability, which resulted in the Applicants forfeiting their interest in valuable property in order to settle all claims with the government to their detriment (A-19-50).

Upon learning of the perjured testimony of Uhalt and Steger at Ohle's criminal trial that resulted in the forfeiture order, Applicants filed motions to set aside the forfeiture pursuant to Rule 60(d)(3) on July 21, 2015. Case 1:08-cr-1109(JSR), Docs. 264-265, 267. On December 30, 2015, Judge Rakoff entered a Memorandum Order denying Applicants' Motion to Set Aside Forfeiture and For Return of Property (A-9-17). Applicants timely appealed the lower court decision (A-18), and the appeal is before the Second Circuit Court of Appeals with oral argument scheduled on January 23, 2018. *See* Case No. 16-601-cr.

Following the filing of the briefs in the appeal, certain prosecutorial admissions, facts and judgments were made or uncovered, including:

1)      On October 28, 2016, the government claimed that "it did not possess the IRS's promoter penalty audit files relating to J&G and Bank One" (after previously representing to the district court in its opposition to the motion for new trial and the Second Circuit on appeal that it had produced the exculpatory materials prior to trial);

2)      On December 12, 2016, the IRS confirmed to undersigned counsel that it possesses the IRS promoter penalty audit files in its Austin Freedom

of Information Act ("FOIA") office; and

3)      On April 26, 2017, the Louisiana Fourth Circuit Court of Appeal confirmed that the 2004 Louisiana Judgment and Agreement preclude Ames from claiming victim status in order to obtain monies from Ohle.

In order to address the new developments, Applicants filed a Motion for Judicial Notice and Supplementation of Record (Doc. 85). On January 9, 2017, the government argued in its Affirmation in opposition that the Second Circuit must refuse to take judicial notice or allow Applicants to supplement the district court record because the issues were not raised before the district court (Doc. 92). Of course, the prosecutorial admissions, facts and judgments were all made, discovered or rendered following the appellate briefings. On May 15, 2017, three weeks after the Louisiana Fourth Circuit Judgment, the Second Circuit denied Applicants' motion for judicial notice and supplementation of record (Doc. 117).

As a result, Applicants petition this Court for a *writ of mandamus* to obtain an expedited return of assets forfeited by Applicants under the district court forfeiture order that is void based upon the final 2004 Louisiana Judgment and Agreement as confirmed in the resulting Louisiana judgments.

## REASONS WHY THE WRIT SHOULD ISSUE

As an initial matter, the 2016 and 2017 Louisiana judgments – that confirm Ames cannot claim "victim" status or obtain monies from Ohle – relate to the 2011 civil law suit filed by Uhalt on behalf of his mother Ames, regurgitating the same

14

allegations that were the subject of proceedings in Louisiana in 2004 – and which allegations served as the bedrock for the forfeiture with respect to Ames. Based on the final 2004 Louisiana Judgment and Agreement, Ames was precluded from being found to be a "victim" of fraud by the U.S. District Court for the Southern District of New York or obtaining any monies from Ohle – and by extension, the Applicants - given the 2004 Louisiana Judgment and Agreement.

A void judgment is one where the court lacked personal or subject matter jurisdiction or entry of order violated due process. Fed. Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A.; U.S.C.A. Const. Amend. 5 – *Triad Energy Corp. v. McNell,* 110 F.R.D. 382 (S.D.N.Y. 1986); *Klugh v. U.S.*, 620 F.Supp. 892 (D.S.C. 1985).

A void judgment is one that, from its inception, is complete nullity and without legal effect. *Holstein v. City of Chicago*, 803 F.Supp. 205, *reconsideration denied* 149 F.R.D. 147, *affirmed* 29 F.3d 1145 (N.D. Ill 1992); *Lubben v. Selevtive Service System Local Bd*. No. 27, 453 F.2d 645, 14 A.L.R. Fed. 298 (C.A. 1 Mass. 1972); *Hobbs v. U.S. Office of Personnel Management*, 485 F.Supp. 456 (M.D. Fla. 1980); *Rubin v. Johns*, 109 F.R.D. 174 (D. Virgin Islands 1985). Similarly, a void judgment is one which, from its inception, is and forever continues to be absolutely null, without legal efficacy, ineffectual to bind the parties or to support a right, of no legal force and effect whatever, and incapable of enforcement in any manner or to any degree – *Loyd v. Director, Dept. of Public Safety*, 480 So. 2d 577

(Ala. Civ. App. 1985).

Judgments entered where the court lacked either subject matter or personal jurisdiction, or that were otherwise entered in violation of due process of law, must be set-aside as void. Here, the district court lacked *both* personal jurisdiction and subject matter jurisdiction and violated the full faith and credit clause of the Constitution which must result in the forfeiture order being void.

**I.** **APPLICANTS HAVE A CLEAR AND INDISPUTABLE RIGHT TO ISSUANCE OF THE WRIT**

**A.** **Louisiana Civil District Court Held on March 23, 2016 that Ames Cannot Claim "Victim" Status**

Three months after the Hon. Judge Rakoff denied the Applicants' motion to set aside the forfeiture based on fraud, the Louisiana Civil District Court on March 23, 2016 dismissed all claims of Ames against Ohle on grounds of *res judicata* (A-81-125). The rationale being that Ames' claims that she and the Ames CRUT were defrauded by Ohle had been previously dispatched in the final 2004 Louisiana Judgment and Agreement entered into by Ames, her husband, the Ames CRUT and Ohle in 2004, which discharged and forever released Ohle from all liability and claims of any kind whether known or unknown. Annexed to the final 2004 Louisiana Judgment and Agreement was a final accounting of Ohle's administration as

16

trustee of the Ames CRUT, which the Louisiana court approved in its Consent Judgment (A-59-80), and ordered conclusive against the beneficiaries of the trust, including Ames.  The Court also found that held Ames could not claim "victim status" or obtain monies from Ohle after January 12, 2007 for any reason, including fraud (A-81-125).

**B.  Louisiana Appellate Court Confirmed on April 26, 2017 that Ames Is Precluded From Obtaining Monies from Ohle**

Ames appealed the March 23, 2016 Louisiana Civil District Court judgment to the Louisiana Fourth Circuit Court of Appeal. Following briefings and oral argument, the Louisiana Fourth Circuit Court of Appeal held in a unanimous 5-0 decision on April 26, 2017 that Ames was precluded by *res judicata* from claiming victim status or obtaining monies from Ohle:

> The district court explained during the January 15, 2016 hearings that it was granting the exception because the parties entered into a global release and that the Settlement Agreement resulted from the parties "no longer having a relationship of trust."
> We further note that at said hearing, counsel for Mr. Uhalt admitted that the Settlement Agreement was indeed a *global release*. The Settlement Agreement states that Mr. and Mrs. Ames agreed to:

> > Hereby discharge and forever release John B. Ohle, III, his heirs, successors, agents, employees, attorneys and assigns of and from any and all liability and all claims and

17

demands or any nature or kind, whether in law or in equity, ***whether or not now known, whether growing out of tort, contract or otherwise, including without limitation all obligations and liability resulting in any manner from*** (i) the administration of the Ecetra N. and Anthony M. Ames 1999 Charitable Remainder Unitrust by John B. Ohle, III as trustee and fully release, discharge and acquit John Ohle of any further responsibility in connection with the Ecetra N. and Anthony M. Ames 1999 Charitable Remainder Unitrust subject to his delivery to the duly appointed successor trustee of all cash and every item of property held by John B. Ohle, III, as trustee of the Ecetra N. and Anthony M. Ames 1999 Charitable Remainder Unitrust and to which the Trust is entitled, and (ii) professional and/or personal services of John B. Ohle, III, rendered to Ecetra Nippert Ames and Anthony M. Ames, or either one of them, at any time up to and including the date of this Agreement. [Emphasis added.]

Moreover, the 2004 Consent Judgment states in pertinent part that:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that the accounting of the entire administration of the Anthony M. and Ecetra N. Ames 1999 Charitable Remainder Unitrust by its Trustee, John Brewster Ohle, III, more fully set forth in Exhibit "B" to the Petition filed in the record of this proceeding is hereby approved in accordance with LSA R.S. 9:2088, and ***such accounting shall be conclusive against a beneficiary of the trust with respect to all matters disclosed in such accounting***, with all costs of these proceedings to be borne by Petitioner. [Emphasis added].

"A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised." La. Civ. Code art. 3080. Our Court has previously explained the binding nature of a compromise on those who were parties to it:

18

> A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised. La. C.C. art. 3080. This preclusive effect of a compromise can be raised in a peremptory exception, under Louisiana Code of Civil Procedure Article 927. See La. C.C. art. 3080, part (a) of Revision Comments—2007. A valid compromise may form the basis of a plea of *res judicata*. *Rein v. Edwards*, 921 So.2d at 1160, citing *Rivett v. State Farm Fire Cas. Co*., 508 So.2d 1356, 1359 (La.1987); see also *Brown v. Drillers, Inc*., 93–1019 (La.1/14/94), 630 So.2d 741. A release executed in exchange for consideration is a compromise. *Brown v. Drillers, Inc*., 630 So.2d at 741.

*Contogouris v. Ocean Therapy Sols., LLC*, 15-0472, p. 7 (La. App. 4 Cir. 1/27/16), 187 So.3d 18, 22, *writ denied*, 16-0367 (La. 4/15/16), 191 So.3d 591.

Based upon our review of the Settlement Agreement, which we read in *pari materia* with the Consent Judgment, we find that the district court did not err in granting Ohle's exception of *res judicata*. The wording of the Settlement Agreement lucidly states that Ohle is released of liability for claims regardless of whether they were known of when the settlement was executed. This wording precludes Mr. Uhalt's argument that Mrs. Ames later learned of additional misconduct committed by Ohle.

[…]

Thus, we find that the district court properly determined that the Settlement Agreement and Consent Judgment formed a valid compromise precluding Mr. Uhalt [on behalf of his mother Ames] from pursuing claims against Ohle.

A-134-137.

## C. Forfeiture Order is Void Because the District Court Lacked Personal Jurisdiction and Violated Constitutional Due Process Protections

A void judgment which includes judgments entered by a court which lacks inherent power to enter the particular judgment, or an order procured by fraud, can be attacked at any time, in any court, either directly or collaterally, provided that the party is properly before the court, *Long v. Shorebank Development Corp.*, 182 F.3d 548 (C.A. 7 Ill. 1999). A court that lacks personal jurisdiction elements such as orders entered in violation of due process of law or orders procured by fraud shall have its orders deemed void. Void judgment may be defined as one in which rendering court lacked subject matter jurisdiction, lacked personal jurisdiction or acted in manner inconsistent with due process of law. *Eckel v. MacNeal*, 628 N.E. 2d 741 (Ill. App. Dist. 1993).

The government was aware and in possession of the final 2004 Louisiana Judgment and Agreement, but circumvented the final Louisiana judgment in order to obtain the unlawful forfeiture order related to the Ames allegations.

The order violated the Applicants' Constitutional due process rights. Specifically, the district court ordered the forfeiture of $1,697,834 from the Applicants related to the "Ames allegations" in circumvention of the final 2004 Louisiana Judgment and Agreement.

20

The jury made no "finding" on the Ames allegations; but, the district court, relying upon on the perjured testimony of Uhalt and Societe Generale salesman Douglas Steger, held that Ohle defrauded Ames.

The district court's forfeiture order violated the Applicants' due process rights, failing to give full faith and credit to the final 2004 Louisiana Judgment and Agreement.

Pursuant to Article IV, Section 1 of the United States Constitution:

> Full faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

Additionally pursuant to 2 U.S.C. § 1738:

> Judicial proceedings [...] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State [...] from which they are taken.

"Section 1738 'require[s] all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" *Steinmetz v. Toyota Motor Credit Corp.*, 963 F.Supp. 1294, 1299 (E.D.N.Y. 1997) (citing *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2nd Cir. 1987)). Furthermore, this rule applies to judgments incorporating a settlement

21

agreement, as in this case, releasing defendants from pending claims. *Matsushita v. Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996).

Moreover, the March 23, 2016 Louisiana Civil District Court judgment – confirmed on April 26, 2017 by the Louisiana Fourth Circuit Court of Appeal – held the final 2004 Louisiana Judgment and Agreement precludes Ames from claiming victim status or obtaining monies from Ohle.

In addition to this due process violation, Applicants suffered other Constitutional violations. For example, the government neither called Ames nor the Ames CRUT trustee as witnesses at trial, depriving Ohle – and, by extension, Applicants – of the Constitutional right to confront one's accuser. *See Crawford v. Washington*, 541 U.S. 36 (2004). The Confrontation Clause found in the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him." The Clause was intended to prevent the conviction of a defendant without that defendant having an opportunity to face his accusers and to put their honesty and truthfulness to test before the jury.

In *Mattox v. United States,* 156 U.S. 237 (1895), the Supreme

Court enunciated the three fundamental purposes that the Confrontation Clause was meant to serve (1) to ensure that witnesses would testify under oath and understand the serious nature of the trial process; (2) to allow the accused to cross-examine witnesses who testify against him; and (3) to allow jurors to assess the credibility of a witness by observing that witness' behavior.

The government listed Ames as a witness at trial, but failed to call her and brought out Uhalt *in her stead* who was willing to lie and perjure himself in order to obtain the unlawful forfeiture order and to obtain control of his mother's estate. Uhalt's fraud aided and abetted by the U.S. Attorney for the Southern District of New York almost worked. However, Uhalt doubled down and attempted to fraudulently obtain additional monies from Ohle in Louisiana, and his house of cards came tumbling down when the Louisiana Courts ended Uhalt's reign of fraud.

**D.    Forfeiture Order Is Void Because It Lacks Subject Matter Jurisdiction Pursuant to Rooker-Feldman Doctrine**

Void judgments are those rendered by a court, which lacked jurisdiction, either of the subject matter or the parties. *Wahl v. Round Valley Bank,* 38 Ariz. 411, 300 P. 955 (1931); *Tube City Mining & Milling Co. v. Otterson*, 16 Ariz. 305, 146 P. 203 (1914); and *Milliken*

*v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 2d 278 (1940).

Further, the Rooker-Feldman doctrine provides that lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment. Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment. The first case to identify this principle was *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

The District Court's forfeiture order reversed the final 2004 Louisiana Judgment and Agreement that released Ohle of any and all liability related to Ames. The preliminary order of forfeiture on September 27, 2010 (A-55-58) is clearly outside the peremptive period provided by Louisiana law. Under Louisiana law, any claim against Ohle by Ames was precluded three years after the final 2004 Louisiana Judgment and Agreement (i.e., January 12, 2007). See La. R.S. 9:2234. Further, any appeal of the final 2004 Louisiana Judgment and Agreement must have been taken by Ames to the Supreme Court, not a U.S. District Court.

Because the District Court lacked subject matter jurisdiction

under the Rooker-Feldman doctrine, the forfeiture order related to Ames is void.

## II.  APPLICANTS HAVE NO OTHER ADEQUATE MEANS TO AVOID IRREPARABLE HARM

Upon discovering the government's fraud, Applicants filed a Motion to Set Aside Forfeiture and For Return of Property pursuant to F.R.C.P. 60(d)(3) seeking to vacate the forfeiture order (Case 08-cr-1109-JSR, Docs. 264-65), which was denied on December 30, 2015 (Doc. 273).  Applicants timely appealed the lower court decision, and the appeal is properly before the Second Circuit Court of Appeals.

The government admissions related to its failure to produce materials prior to trial, facts disproving the government's contention that it was not in possession of the IRS audit materials, facts and newly discovered documents disproving the government's assertion that the IRS audit materials are not exculpatory, and the Louisiana judgments all occurred *after* the lower court proceedings.  *See* Motion for Judicial Notice and Supplementation of Record on December 30, 2016, and Reply on January 23, 2017 (Docs. 85, 117).

Specific to this petition related to the Ames forfeiture, the Louisiana Civil District Court held that Ames was precluded by *res judicata* from obtaining monies from Ohle based on the final 2004 Louisiana Judgment and Agreement. Uhalt appealed to the Louisiana Fourth Circuit Court of Appeal, which confirmed

25

the lower court judgment, rendering the U.S. District Court forfeiture order void related to the forfeiture of $1,697,834.

The 2016 and 2017 Louisiana judgments rendered the forfeiture order void. In order to bring the issue before the Second Circuit in their appeal, Applicants filed on December 30, 2016 a Motion for Judicial Notice and Supplementation of Record, which the government opposed on January 9, 2017, arguing that the Second Circuit should not take judicial notice or allow Applicants to supplement the record in the district court because Applicants failed to previously raise the matter (Doc. 92). Of course, the admissions of the government, the confirmation of the IRS that it possessed the exculpatory IRS audit materials, and the Louisiana court judgments were all rendered after the lower court proceedings.

On April 26, 2017, the Louisiana Fourth Circuit Court of Appeal unanimously held that Ames is precluded from claiming victim status or obtaining monies from Ohle based on the 2004 Judgment and Agreement. Uhalt did not timely file a petition for *writ of certiorari* with the Louisiana Supreme Court, thus rendering the *res judicata* judgment final.

On May 15, 2017, the Second Circuit denied Applicants' motion for judicial notice and supplementation of record (Doc. 117).

Under the All Writs Statute, a Court of Appeal is empowered to "issue all writs necessary or appropriate in aid of [its] ... jurisdiction[ ] and agreeable to the

26

usages and principles of law."  28 U.S.C. Sec. 1651(a) (1982).  This power "is

meant to be used only in the exceptional case," *Bankers Life & Casualty Co. v.

Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953), and not as "a

substitute for an appeal." *Schlagenhauf v. Holder*, 379 U.S. 104, 110, 85 S.Ct. 234,

238, 13 L.Ed.2d 152 (1964). See also *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S.

33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam) (mandamus is "to

be invoked only in extraordinary situations.")

But, a *writ of mandamus* provides a logical method by which to supervise

the administration of justice within the Circuit.  See *Will v. United States*, 389 U.S.

90, 107, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967) (noting the vital corrective and

didactic function of mandamus); *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259-

60, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957) (acknowledging important function of

mandamus to monitor district courts); see generally 9 J. Moore, B. Ward & J.

Lucas, Moore's Federal Practice, ¶ 110.28, at 312 (2d ed. 1987).

As the Second Circuit has noted, "the touchstones ... of review by mandamus

are usurpation of power, clear abuse of discretion and the presence of an issue of

first impression." *American Express Warehousing, Ltd. v. Transamerica Insurance

Co.*, 380 F.2d 277, 283 (2d Cir.1967).  Similarly, w*rit of mandamus* is an

extraordinary remedy, available only in extraordinary circumstances, *In re United

States*, 10 F.3d 931, 933 (2d Cir. 1993), and will be granted only if petitioner

27

shows: "(1) the presence of a novel and significant question of law; (2) the inadequacy of other available remedies; and (3) the presence of a legal issue whose resolution will aid in the administration of justice." *Id.* (internal citations omitted).

First, Applicants assert that the lower federal court forfeiture order that ignores a prior final state judgment is a novel issue raising a significant Constitutional issue. In *Honeycutt v. United States*, 198 L. Ed. 2D 73 (U.S. 6/5/17), 581 U.S. ___ (2017) and *Leonard v. Texas*, 137 S. Ct. 847 (U.S. 3/6/17), 580 U.S. ___ (2017), the Supreme Court recently addressed the interplay between the judicial expansion of criminal forfeiture and the legal limits related to due process rights. Here, the district court ignored the prior litigation and the resulting Louisiana state judgment and global settlement, and unlawfully awarded monies to Ames based on the perjured testimony of her son Uhalt and Societe Generale salesperson Steger.[3]

Second, Applicants attempted to incorporate the 2016 and 2017 Louisiana judgments in their appellate proceedings. However, the Court rejected those efforts, resulting in the necessity of filing this petition for *writ of mandamus*.

---

[3] It should also be noted that the government's pre-trial restraint of the Applicants' assets prevented them from litigating their claims, resulting in the unjust and unlawful forfeiture order. See *Luis v. United States*, 136 S. Ct. 1083 (U.S. 2016), where the Supreme Court held "that the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment."

Third, the lack of jurisdiction of the district court to preside over a matter that fundamentally changed or altered the 2004 Louisiana Judgment and Agreement is clear and absolute. As a result, the Second Circuit should efficiently use its limited judicial assets and issue the *writ of mandamus*, rendering the fraud on the court claims moot. This approach aids the administration of justice conserving limited judicial assets and promptly returning the assets to the Applicants without further delay.

It is incontrovertible that Applicants will suffer irreparable harm absent the issuance of the *writ of mandamus* that orders the prompt return of the property wrongfully seized in the unlawful forfeiture order from Mrs. Ohle and her children. Applicants are currently in foreclosure on their Florida property. Any delay would result in irreparable harm to the family. Once the Florida property is foreclosed, the effects of the void forfeiture order simply cannot be unwound by an after-the-fact financial transaction. Applicants have been devastated by the unlawful forfeiture order, and the *writ of mandamus* is the appropriate vehicle to rectify the Constitutional violations of due process.

## III.   APPLICANTS' PETITION FOR *WRIT OF MANDAMUS* SHOULD BE GRANTED BASED ON THE FACTS HEREIN

Ohle had litigated the false Uhalt allegations in Louisiana six years before the government filed a second superseding indictment to include the false

29

allegations of Uhalt in order to obtain venue in the Southern District of New York in *U.S. v. Ohle et al*. In the 2003 Louisiana litigation, Ohle obtained a full and final release of any and all liability related to Ames under Louisiana law, the 2004 Louisiana Judgment and Agreement, which the government ignored (and the district court failed to give full faith and credit). But, the Louisiana Courts entered judgments in 2016 and 2017 confirming the 2004 Louisiana Judgment and Agreement that render the federal district court forfeiture order void, precluding Ames from claiming a victim status or obtaining monies from Ohle.

## **CONCLUSION**

The petition for *writ of mandamus* should be granted because the district court's forfeiture order related to Ames is void. This Court should order Hon. Senior Judge Jed S. Rakoff to (1) vacate the forfeiture order related to the "Ames allegations," (2) order the expeditiously return to the Applicants by the government of the current fair market value of the $1,697,834 in assets unlawfully forfeited, (3) order the government to pay Applicants consequential damages, (3) grant Ohle all further relief to which he may be entitled at law or in equity, and (4) notify the Second Circuit that the fraud allegations related to Ames are moot.

Dated:  December 12, 2017                    *Respectfully submitted*,

                                             /s/ *Wesley D. Ehrhardt*
                                             Wesley D. Ehrhardt (MB# 103021)
                                             Patterson Ehrhardt, PLLC
                                             213 Main Street
                                             Post Office Box 399
                                             Como, Mississippi 38619
                                             *Telephone*:  (662) 526-1992
                                             *Email*:  wde@PattersonEhrhardt.com


<u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitation of F.R.A.P. 32(a)(7)(B), because this Brief of Appellant contains less than 7,000 words according to the word processor the brief was prepared on, and this word count is less than the 7,800 words set forth in F.R.A.P. 21(d)(1), excluding the parts of the brief exempted by F.R.A.P. 32(a)(7)(B)(iii).

I also hereby certify that the brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type style requirements of F.R.A.P. 32(a)(6), because the brief has been prepared with a Microsoft Word processing program in Time New Roman 14-point type.

Dated:  December 12, 2017.

                                             /s/ *Wesley D. Ehrhardt*

CERTIFICATE OF SERVICE

I, Wesley D. Ehrhardt, hereby certify that this Petition for *Writ of Mandamus* has been served upon all parties to the underlying U.S. District Court proceeding, including opposing government counsel, as well as the trial-court judge, on this the 12th day of December, 2017.

/s/ *Wesley D. Ehrhardt*